UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| BOBBI J. DELMATER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )     Case No. 2:16-CV-70-SPM |
| | ) |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final

decision of Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, denying

the applications of Plaintiff Bobbi J. Delmater ("Plaintiff") for Disability Insurance Benefits

("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental

Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.*

(the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant

to 28 U.S.C. § 636(c). (Doc. 8). Because I find the decision denying benefits was supported by

substantial evidence, I will affirm the Commissioner's denial of Plaintiff's application.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. FACTUAL AND PROCEDURAL BACKGROUND

On May 23, 2013, Plaintiff applied for DIB and SSI, alleging that she had been unable to work since June 2, 2010, due to fibromyalgia, depression, bursitis, chronic pain, headaches, degenerative disc disease, anxiety, restless leg syndrome, overactive bladder, and fatigue. (Tr. 438-45, 446-47, 461). Her applications were initially denied. (Tr. 347, 366, 369-73). Plaintiff filed a request for a hearing by an Administrative Law Judge ("ALJ"). (Tr. 377). On August 24, 2015, Plaintiff amended the alleged disability onset date to December 11, 2012. (Tr. 456). On September 14, 2015, following a hearing, the ALJ found that Plaintiff was not under a "disability" as defined in the Act. (Tr. 8-27). On November 3, 2015, Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council. (Tr. 39). On August 26, 2016, the Appeals Council declined to review the case. (Tr. 1-4). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

At the hearing before the ALJ, held on August 25, 2015, Plaintiff testified as follows. She was 44 years old; was five feet, seven inches tall; and weighed 260 pounds. (Tr. 299, 301). She lived with her husband and sixteen-year-old son. (Tr. 301). She was able to drive herself to appointments and stores. (Tr. 301). She had completed two years of college and could read, write, and do simple math. (Tr. 301-02). She had worked in the past doing secretarial and housekeeping work and also at an insurance company, processing claims. (Tr. 303-04).

Plaintiff testified that the main reason she has been unable to work is her fibromyalgia, which causes pain in her neck, back, and other areas. (Tr. 306). She also testified that she has degenerative disc disease, carpal tunnel syndrome, irritable bowel syndrome, and restless leg syndrome. (Tr. 312-16, 322). She testified that because of her pain, she has difficulty washing her

hair, and it takes her two to three days to clean the house because she has to take breaks. (Tr. 306).

She testified that she can stand for seven to ten minutes before having problems and can sit for 20

minutes before she needs to change positions. (Tr. 308). She also testified that her neck surgery

helped with her neck pain, but it is still stiff. (Tr. 313-14). She testified that the stimulator that was

put in her lower back helps with her back pain in one particular area but that she still has issues

with the rest of her back from degenerative disc disease. (Tr. 314-15). She also testified that she

has carpal tunnel syndrome in her right wrist and that she often drops things. (Tr. 312, 322). She

has fatigue and naps at least once a day. (Tr. 319). She sometimes elevates her feet for half an hour

because of swelling, but not every day. (Tr. 320)

Plaintiff testified that she has trouble concentrating and that her short-term memory is very

bad. (Tr. 306, 309). She often sits down to do one task and gets diverted. (Tr. 310). Her short-term

memory is so bad that her family has to constantly remind her that she has already told them

something or already asked them a question. (Tr. 310).  She has depression, feels that she is

worthless and cannot do what she has done in the past, and has crying spells at least once or twice

a week, lasting for an hour. (Tr. 317-18). She also thinks she has "maybe anxiety as well, too,"

which causes her to worry about bills and other things. (Tr. 318).

With regard to Plaintiff's medical records and work history, the Court accepts the facts as

presented in the parties' respective statements of facts and responses. The Court will discuss

specific facts relevant to the parties' arguments as needed in the discussion below.

## II.    STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she

is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health*

*& Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled

a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant

disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e), 416.920(e). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

### III.     THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff met the insured status requirements of the Act through December 31, 2015; that she has not engaged in substantial gainful activity since December 11, 2012, the alleged onset date; and that she had the following

severe impairments: degenerative disc disease of the lumbar and cervical spine, fibromyalgia, mild carpal tunnel syndrome status post surgeries, a depressive disorder, an anxiety disorder, and obesity. (Tr. 13). The ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 14). The ALJ found that Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can never climb ladders, ropes, or scaffolds and can occasionally climb stairs or ramps. She can occasionally stoop, kneel, crouch or crawl. She should avoid hazards such as unprotected heights and moving and dangerous machinery. She is limited to work involving simple, routine tasks and simple work related decisions. She is limited to work involving only occasional interactions with the public and coworkers. She can perform work that involves only occasional decision making and changes in the work setting. The claimant is also limited to frequent use of her upper extremities for handling, fingering, and reaching.

(Tr. 16-17). At Step Four, the ALJ found that Plaintiff was not able to perform her past relevant work as a claims processor. (Tr. 25). However, at Step Five, relying on the testimony of a vocational expert, the ALJ found that Plaintiff was capable of performing other jobs that exist in significant numbers in the national economy, including representative occupations such as sealer and semi-conductor bonder. (Tr. 26). The ALJ concluded that Plaintiff had not been under a disability, as defined in the Act, from December 11, 2012, through September 14, 2015, the date of his decision. (Tr. 27).

## IV. DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds: (1) that the ALJ's RFC determination is not supported by substantial evidence; and (2) that the ALJ erred by failing to give controlling weight to the opinions of treating rheumatologist Dr. Chad Ronholm and treating psychiatrist Dr. David Goldman.

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)). The Court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice." *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

### B. The ALJ's Assessment of Medical Opinion Evidence From Plaintiff's Treating Physicians

The Court first considers Plaintiff's argument that the ALJ erred by failing to give controlling weight to the opinions of treating rheumatologist Dr. Chad Ronholm and treating

psychiatrist Dr. David Goldman. Plaintiff also argues that even if the ALJ did not give controlling weight to these opinions, the ALJ should have given them greater weight.

Under the regulations applicable to Plaintiff's claim, if the Social Security Administration finds that a treating source's medical opinion on the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Social Security Administration will give that opinion "controlling weight." 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2).[2] *See also Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009) ("A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.") (internal quotation marks omitted). The ALJ may discount a treating physician's opinion if it is inconsistent with or contrary to the medical evidence as a whole. *Halverson v. Astrue*, 600 F.3d 922, 930 (8th Cir. 2010). The ALJ should consider several factors in weighing medical opinions from a treating source, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the evidence provided by the source in support of the opinion, the consistency of the opinion with the record as a whole, the level of specialization of the source, and other relevant factors. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). "[W]hen an ALJ discounts a treating physician's opinion, he should give good reasons for doing so." *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (quoting *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007)). *See also* 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2) (stating that the Social Security

---

[2] These regulations apply to claims filed before March 27, 2017. For claims filed on or after March 27, 2017, the rule that a treating source opinion is entitled to controlling weight has been eliminated. *See* 20 C.F.R. §§ 404.1520c & 416.920c.

Administration "will always give good reasons in [the] notice of determination or decision for the weight [it] gives [the claimant's] treating source's medical opinion").

The undersigned will consider separately the opinion of Dr. Ronholm and the opinion of Dr. Goldman.

### 1. *The Opinion of Treating Rheumatologist Dr. Ronholm*

On June 29, 2015, Dr. Ronholm filled out a Medical Source Statement of Ability to Do Work-Related Activities (Physical). (Tr. 1210-13). Dr. Ronholm found that because of Plaintiff's generalized pain and herniated disc, Plaintiff could lift and carry ten pounds frequently and twenty pounds occasionally; could stand and walk about four hours during an eight-hour day; and could sit without limitation. (Tr. 1210). He opined that with her chronic back pain with degenerative disc disease and herniated disc, she could never twist, stoop, crouch, or climb ladders and could occasionally climb stairs. He found that due to arthralgias and pain in her hands and upper extremities, she could occasionally push/pull; could frequently reach, handle, and finger; and could constantly feel. (Tr. 1211). He also stated that she should avoid concentrated exposure to perfumes, soldering fluxes, solvents/cleaners, and chemicals, and should avoid moderate exposure to extreme cold, extreme heat, high humidity, and fumes, odors, dusts, and gases. (Tr. 1212). He found that Plaintiff's impairments or treatment would cause her to be absent from work about three days per month and would cause her to be off task 15% of a typical workday (Tr. 1212-13) He also found that it was unknown whether Plaintiff would need to take unscheduled breaks during the workday but that she might need to do so several times per month for five to thirty minutes due to muscle weakness, chronic fatigue, pain, parathesias, numbness, and adverse effects of medication. (Tr. 1213).

The ALJ discussed Dr. Ronholm's opinion and gave it "some weight." (Tr. 24). The ALJ discounted Dr. Ronholm's opinion regarding environmental and pulmonary restrictions because Plaintiff did not have any corresponding impairments. (Tr. 24). He also found no support for Dr. Ronholm's opinions regarding absences and unscheduled breaks. (Tr. 24).

Plaintiff first argues that the ALJ erred by failing to consider the length of the treating relationship between Dr. Ronholm and Plaintiff, noting that Plaintiff had been seeing Dr. Ronholm for almost two full years before Dr. Ronholm offered his opinion. The undersigned finds no error. Plaintiff correctly points out that the length of a treatment relationship is a proper factor to consider in weighing the opinion of a treating physician. *See* 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i). However, the ALJ was not required to expressly discuss every factor set forth in the regulations in assessing Dr. Ronholm's opinion. *See Derda v. Astrue*, No. 4:09-CV-01847-AGF, 2011 WL 1304909, at *10 (E.D. Mo. Mar. 30, 2011) ("While an ALJ must consider all of the factors set forth in 20 C.F.R. § 404.1527[ ], he need not explicitly address each of the factors."). Failure to discuss each factor does not mean the ALJ did not consider them. Moreover, two years is not a particularly long treatment relationship, and it is not obvious that the length of the relationship should have been a significant factor in determining the appropriate weight to give the opinion.

Plaintiff also argues that although there was no objective evidence to support several of the environmental and pulmonary restrictions in the record, there is evidence to support the opinion that Plaintiff should avoid extreme cold. She cites a record from July 1, 2013, in which Dr. Ronholm noted in Plaintiff's review of systems that she had "increased cold intolerance." (Tr. 875). The undersigned finds no error. Plaintiff does not point to, and the Court has not found, any evidence to suggest that Plaintiff had any ongoing complaints of cold intolerance or that any of

her treatment providers made any objective findings regarding Plaintiff's inability to tolerate cold. Moreover, as Defendant points out, Plaintiff's chest and lung examinations were normal. (Tr. 847, 1167, 1219). The absence of treatment notes to support the opined limitations was a good reason for the ALJ not to include those limitations. *See Toland v. Colvin*, 761 F.3d 931, 936 (8th Cir. 2014) (ALJ properly discounted treating doctor's opinion regarding environmental restrictions related to temperature changes, fumes, odors, chemicals, and gases where the doctor provided no explanation for why those restrictions were necessary and where neither the doctor's treatment records nor the other medical evidence in the record provided a medical justification for the restrictions); *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (affirming the ALJ's decision to discount the opinion of a treating physician where it contained limitations that "stand alone" and "were never mentioned in [the physician's] numerous records of treatment . . . ").

Plaintiff also argues that the ALJ incorrectly found that the record did not support the absenteeism or need for unscheduled breaks in Dr. Ronholm's opinion. Plaintiff argues that the evidence of pain and fatigue in the record supports a need for absences and breaks. Plaintiff also argues that a need for absences and breaks is supported by evidence that Plaintiff has told her doctors that she naps during the day due to her inability to sleep and night or as a way to cope with her anger and stress. However, as the ALJ reasonably found, the record as a whole did not fully support Plaintiff's complaints of severe pain, stress, and fatigue that might cause such limitations. (Tr. 17-24). The ALJ considered that Plaintiff's cervical spine surgery had been successful in reducing or eliminating her cervical pain (Tr. 23, 1006, 1007, 1009, 1023, 1064); that Plaintiff's back pain had been significantly improved by medication and by the implantation of her spinal cord stimulation device (Tr. 23, 1020, 1042, 1046, 1056, 1060, 1067, 1127-29, 1130, 1190-93, 1217-19, 1244); that Plaintiff had reported good sleep (Tr. 21, 963, 1020, 1067); that Plaintiff

reported that her medication had improved her mood and her fibromyalgia symptoms, that she was feeling better, and that her symptoms were stable (Tr. 22, 1244-45); and that Plaintiff's mental and physical examination findings were often mild or normal (Tr. 790, 824, 833, 838, 841-42, 847, 850, 856, 862, 877, 885, 1017-18, 1022, 1067-68, 1072-73, 1098, 1104, 1109, 1156, 1191, 1218-19, 1227-28, 1245). It was not unreasonable for the ALJ to find Dr. Ronholm's opinion about Plaintiff's need for absences and breaks due to pain, stress, and fatigue was not supported by the record as a whole.

For all of the above reasons, the Court finds that the ALJ gave good reasons, supported by substantial evidence, for partially discounting Dr. Ronholm's opinions. The ALJ's assessment of this opinion fell within the "available zone of choice," and thus this Court will not disturb that assessment. *See Hacker v. Barnhart*, 459 F.3d 934, 938 (8th Cir. 2006) (finding no error in ALJ's decision to discount opinion of a treating physician where that decision was supported by good reasons and did not "lie[] outside the available zone of choice").

## 2. *The Opinion of Treating Psychiatrist Dr. David Goldman*

Plaintiff next argues that the ALJ did not give sufficient weight to the opinion of her treating psychiatrist, Dr. David Goldman. On July 17, 2015, Dr. Goldman completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental). (Tr. 1222-25). On the check-box portions of the form, Dr. Goldman found Plaintiff had "extreme" limitations[3] (the most severe option given) in every area assessed. He indicated that Plaintiff had extreme limitations in the ability to understand and remember simple instructions, the ability to carry out simple instructions,

---

[3] The form asks the person completing it to evaluate the existence and extent of limitations on the individual's ability to do various work-related activities on a sustained basis. The options for answers are none, mild, moderate, marked, and extreme. "Extreme" is defined as "There is major limitation in this area. There is no useful ability to function in this area." (Tr. 1222).

the ability to make judgments on simple work-related decisions, the ability to understand and remember complex instructions, the ability to carry out complex instructions, and the ability to make judgments on complex work-related decisions. (Tr. 1222-23). In support of those limitations, he noted that Plaintiff had "extreme difficulty with short-term memory" and that she takes many medications and has anxiety, depression, and physical problems that adversely impact her memory, concentration, and judgment. (Tr. 1223). He also found that Plaintiff had extreme limitations in the ability to interact appropriately with the public, the ability to interact appropriately with co-workers, the ability to interact appropriately with supervisors, and the ability to respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 1223). He noted that because of her mood disorder, anxiety disorder, and physical problems, Plaintiff was prone to becoming easily and quickly frustrated and to "shutting down" in social interactions. (Tr. 1223). Dr. Goldman also noted that due to her chronic pain, Plaintiff had difficulty using her arms, legs, hands, and back, and will go through periods when she cannot stand, cannot sit, and can find relief only from lying down. (Tr. 1224). Dr. Goldman also opined that Plaintiff's impairments were likely to produce "good days" and "bad days"; that Plaintiff would be absent from work more than four days per month; that Plaintiff would typically be off-task 25% or more of the time; and that Plaintiff would need to change positions and take breaks of 15 to 20 minutes every hour at a minimum (due to panic attacks, anxiety, crying spells, adverse effects of medication, and other problems). (Tr. 1224).

The ALJ discussed Dr. Goldman's opinion and gave it "no weight." The ALJ found that "the extreme findings in all areas" were inconsistent with Plaintiff's limited mental health care, Plaintiff's presentation at the hearing, Plaintiff's own testimony, and the objective medical evidence discussed in the ALJ's opinion. (Tr. 24).

After review of the record, the Court finds substantial evidence to support the ALJ's decision to give no weight to the extreme limitations in Dr. Goldman's opinion. As the ALJ noted, Dr. Goldman's extreme limitations were inconsistent with the objective medical evidence in his own treatment notes, which involved generally normal or nearly normal findings. Plaintiff began seeing Dr. Goldman in January 2015, at which time he reviewed her history, described her subjective complaints, and conducted a mental status examination. (Tr. 1077-81). He noted that she was alert and oriented to person, place, time, and situation; that she correctly identified the current and former presidents; that she correctly spelled a word forward and backward without hesitation; that she identified similarities between various words but could not think of a similarity between fly and tree; and that when challenged to remember the words, "cup, clock, and phone" after eight minutes, she remembered them as "cup, phone, and clock. (Tr. 1078-79). Dr. Goldman diagnosed dysthymic disorder and major depressive disorder, assigned a Global Assessment of Functioning ("GAF") score of 35,[4] and prescribed medications. (Tr. 1079-81). At her next visit, in February 2015, Plaintiff reported that she thought her medication was helping, and Dr. Goldman noted that she had a "good response" to medication, with no side effects. (Tr. 1067). He found that her appearance, behavior, activity level, orientation, speech, affect, thought processes, insight, judgment, cognition, and impulse control were all normal. (Tr. 1067-68). At her next visit, in April

_____

[4] The Global Assessment of Functioning Scale (GAF) is a psychological assessment tool wherein an examiner is to "[c]onsider psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness"; it does "not include impairment in functioning due to physical (or environmental) limitations." *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV)*, 32 (4th ed. 1994). A GAF score between 31 and 40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoid friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." *Id.* at 32.

2015, Plaintiff reported that she thought her medication was working but wondered if it would help more if she bumped it up. (Tr. 1072). She also reported that her sleep had been up and down and asked about medications for weight loss. (Tr. 1072). Dr. Goldman again reported that she had a "good response" to medication, with no side effects, and again found that her appearance, behavior, activity level, orientation, speech, affect, thought processes, insight, judgment, cognition, and impulse control were all normal. (Tr. 1072-73). At her next visit in July 2015, Plaintiff reported being stressed out and anxious due to money problems and said that she was very depressed and her leg was constantly bouncing. (Tr. 1227). Dr. Goldman gave her samples of a new medication and reported that her response to medication was "fair." (Tr. 1227). He found that her activity level, orientation, speech, thought processes, cognition, and impulse control were normal, though he found her appearance, affect, behavior, insight, and judgment abnormal due to stress, pain, and depression. (Tr. 1228). Dr. Goldman's treatment records dated in the months after the ALJ's decision similarly show that Plaintiff generally had a good response to medication, and that her mental status examinations findings were generally either completely normal or mostly normal. (Tr. 245-46, 252-53, 260-61, 268-69). Dr. Goldman's generally normal findings with regard to Plaintiff's cognition, judgment, and thought processes are inconsistent with Dr. Goldman's conclusion that Plaintiff had such severe symptoms that she could not even understand, remember, and carry out even simple instructions and could not make judgments on even simple work-related decisions. His normal findings with regard to Plaintiff's speech, behavior, and impulse control are inconsistent with his opinion that Plaintiff would be completely incapable of interacting with coworkers and others. Moreover, Dr. Goldman almost always reported that Plaintiff had "no side effects" from her medications, which is inconsistent with his suggestion that her many medications cause extreme limitations in her abilities. (Tr. 245, 252, 268, 1072, 1227).

As the ALJ also properly noted, Dr. Goldman's extreme opinions are inconsistent with the objective findings of other treatment providers, who often indicated that although Plaintiff had anxiety and/or depression and sometimes had attention and concentration problems, she generally had a cooperative attitude, normal speech and thought content, appropriate judgment and insight, and intact cognitive function, memory, attention, and concentration. (Tr. 824, 833,838, 841-42, 847, 850, 862, 1017-18, 1098, 1104, 1109, 1012, 1191, 1218).

Moreover, as the ALJ also noted, some of Dr. Goldman's opinions are inconsistent with Plaintiff's own testimony. (Tr. 24). Dr. Goldman opined that Plaintiff would need to take breaks every hour during the day due in part to panic attacks, anxiety, crying spells, and medications. However, Plaintiff testified that she only had crying spells once or twice a week for about an hour, and that as of August 2015 she had only ever had a single panic attack. (Tr. 318). In addition, Plaintiff's testimony about her impairments did not include any indication that Plaintiff had difficulty making judgments and decisions, nor did it include any indication that Plaintiff had difficulty interacting with others.

In sum, it was entirely reasonable for the ALJ to find that the record was inconsistent with Dr. Goldman's opinion that Plaintiff is completely incapable of performing any mental work-related functions. The Court also notes that although the ALJ stated that he gave "no weight" to Dr. Goldman's opinions, the ALJ did incorporate some of the limitations in Dr. Goldman's opinions in the RFC. Dr. Goldman's opinion regarding Plaintiff's inability to understand, carry out, and follow complex instructions is accommodated by the limitation in the RFC to work involving simple, routine tasks and simple work-related decisions. Dr. Goldman's opinion regarding Plaintiff's limited ability to interact appropriately with others is partially accommodated by the limitation in the RFC to work involving only occasional interactions with the public and

coworkers. Dr. Goldman's opinion regarding Plaintiff's inability to respond appropriately to usual work situations and to changes in a routine work setting is partially accommodated by the limitation in the RFC to work involving only occasional changes in the work setting.

For all of the above reasons, the Court finds that the ALJ gave good reasons, supported by substantial evidence for his evaluation of Dr. Goldman's opinions. *See Toland v. Colvin*, 761 F.3d 931, 935-36 (8th Cir. 2014) (ALJ properly discounted treating physician's opinion that was inconsistent with physician's own treatment notes); *Halverson*, 600 F.3d at 930 (ALJ appropriately discounted treating doctor's limitations when they were inconsistent with the plaintiff's mental status examinations). As with Dr. Ronholm's opinion, the ALJ's assessment of Dr. Goldman's opinion fell within the available "zone of choice," and the Court will defer to that decision. *See Hacker*, 459 F.3d at 938.

### C. The ALJ's RFC Assessment and Credibility Determination

The Court next considers Plaintiff's argument that the RFC assessment is not supported by substantial evidence. Plaintiff also challenges several aspects of the ALJ's analysis of the credibility of Plaintiff's subjective complaints. After review of the record, the Court finds substantial evidence to support the RFC assessment and credibility analysis.

A claimant's RFC is "the most a claimant can do despite her limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

"Before determining a claimant's RFC, the ALJ first must evaluate the claimant's credibility." *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) (quotation marks omitted). When evaluating the credibility of a plaintiff's subjective complaints, the ALJ must consider several factors: "(1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints." *Moore*, 572 F.3d at 524 (citing *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008), and *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). "An ALJ who rejects subjective complaints must make an express credibility determination explaining the reason for discrediting the complaints." *Moore*, 572 F.3d at 524 (quoting *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000)). However, the ALJ is not required to explicitly discuss each of these factors in relation to a claimant. *Id.* The court "will defer to the ALJ's credibility finding if the ALJ 'explicitly discredits a claimant's testimony and gives a good reason for doing so.'" *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011) (quoting *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010)).

The Court first considers the physical RFC finding, which limited Plaintiff to sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the additional limitations that Plaintiff could never climb ladders, ropes, or scaffolds; could occasionally climb stairs or ramps; could occasionally stoop, kneel, crouch, or crawl; should avoid hazards such as unprotected heights and moving and dangerous machinery; and was limited to frequent use of her upper extremities for handling, fingering, and reaching. (Tr. 16-17). Sedentary work is defined in the regulations as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally
> lifting or carrying articles like docket files, ledgers, and small tools. Although a

sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a) & 416.967(a). The Eighth Circuit has noted that a limitation to sedentary work "in itself is a significant limitation." *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005).

The Court finds substantial evidence in the record to support the ALJ's finding that Plaintiff was capable of this significantly limited range of physical work. First, the physical RFC finding is supported in part by the opinion of Plaintiff's treating physician, Dr. Chad Ronholm, which the ALJ gave "some weight." (Tr. 24, 1210-13). Dr. Ronholm opined, *inter alia*, that Plaintiff could lift and carry ten pounds frequently and twenty pounds occasionally, could stand and walk about four hours during an eight-hour day, and could sit without limitation. (Tr. 1210). These sitting, standing, walking, lifting, and carrying limitations match or exceed those required for sedentary work, providing support for the RFC. The physical RFC finding is also supported by treatment records showing that many of Plaintiff's asserted symptoms improved significantly with treatment. The record shows that Plaintiff had significant neck pain, but it also shows that her cervical spine surgery was largely successful in addressing that pain. Plaintiff reported minimal neck pain at a follow-up visit two weeks after surgery and then denied any neck pain at a follow-up visits several months after surgery. (Tr. 23, 1006, 1007, 1009, 1023, 1064). As the ALJ also noted, although Plaintiff had significant lower back pain at times, she reported that the implantation of a spinal cord stimulator significantly decreased her pain, including reports at times that it provided 80% relief or brought her lower back pain level down to a 1/10, 2/10 or 3/10. (Tr. 23, 1042, 1046, 1056, 1060, 1127-29, 1130, 1190-93, 1217-19, 1244); shortly after the ALJ's decision, she reported her pain as a 0/10. (Tr. 41, 43). In addition, the ALJ considered that Plaintiff reported that her medication had improved her mood and her fibromyalgia symptoms, and she told her doctor that

she was feeling better and her symptoms were stable. (Tr. 22, 78, 1244-45). Impairments that can be controlled by treatment do not support a finding of disability. *See Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling." (quoting *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009)); *Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009) ("Impairments that are controllable or amenable to treatment do not support a finding of disability."). The physical RFC finding is further supported by the numerous mild or normal objective findings in the record. These include EMG findings of only mild carpal tunnel syndrome (Tr. 885); findings of normal range of motion and strength (Tr. 877, 1022, 1156, 1245); mild findings on imaging of Plaintiff's neck (Tr. 790, 856); and negative straight leg raise test results (Tr. 43, 48, 1219).

The Court also finds substantial evidence to support the ALJ's mental RFC finding. The Court first notes that the ALJ did not entirely discount the evidence in the record that Plaintiff suffered from significant mental symptoms, but instead limited Plaintiff to work involving simple, routine tasks and simple work-related decisions; work involving only occasional interactions with the public and coworkers; and work involving only occasional decision making and changes in the work setting. The ALJ's conclusion that Plaintiff could perform work within these limits is supported by the record. First, as discussed at length above in the section addressing Dr. Goldman's opinions, this mental RFC is supported by the many treatment records from Plaintiff's treating psychiatrist and others showing that although Plaintiff had some anxiety, depression, and difficulty concentrating, she was generally alert, cooperative, had normal speech and thought processes, had normal judgment and insight, and had normal memory, concentration, cognition, and impulse control. (Tr. 824, 833,838, 841-42, 847, 850, 862, 1017-18, 1098, 1104, 1109, 1068, 1073, 1012, 1191, 1218, 1228). Second, the mental RFC finding is supported by evidence suggesting that

Plaintiff's mental impairments improved with medication, including Plaintiff's treating psychiatrist's frequent notes that she had a "good" (or sometimes "fair") response to medication. (Tr. 1067, 1072, 1227, 245, 252, 266, 268). Third, the mental RFC is supported by Plaintiff's own testimony about her abilities, as well as her husband's report about her abilities. At the hearing before the ALJ, Plaintiff testified that she has depression and "maybe anxiety," but she did not describe debilitating symptoms; instead, she described having crying spells for about an hour once or twice a week and described worrying about bills and other things. (Tr. 318). She also testified to being easily diverted when trying to concentrate on a task and to requiring reminders to assist her with her memory, but she did not suggest that she is unable to complete even simple and routine tasks. In Plaintiff's husband's third-party function report, Plaintiff's husband indicated that although Plaintiff had some concentration problems and did not handle stress or changes in routine well, she was able to pay bills, handle a savings account, use a checkbook, count change, read, play on the computer, visit with others, and go to church; did not need to be reminded to go places; did not have any problems getting along with family, friends, neighbors, or others; and followed written and spoken instructions well. (Tr. 470-76).

The Court also finds that the ALJ conducted a proper credibility analysis, supported by good reasons and substantial evidence. As the ALJ noted, Plaintiff asserted that she was disabled due to a combination of back pain, neck pain, other pain from fibromyalgia, pain in her hands, obesity, concentration and memory problems, and depression and anxiety that caused crying spells. (Tr. 17). The ALJ expressly found Plaintiff's complaints only partially credible after consideration of several of the relevant factors. (Tr. 17-23). First, as discussed above, the ALJ reasonably considered the history of Plaintiff's subjective complaints of pain and mental symptoms along with the evidence that they improved with treatment. *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th

Cir. 2005) ("Evidence of effective medication resulting in relief . . . may diminish the credibility of a claimant's complaints."). Second, as discussed above, the ALJ considered objective medical evidence showing several normal or mild examination findings, both physical and mental. (Tr. 23). *See Goff v. Barnhart*, 421 F.3d 785, 792-93 (8th Cir. 2005) (holding that it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in assessing credibility of subjective complaints). Third, the ALJ reasonably found that Plaintiff's daily activities—which included caring for her teenaged son, cleaning up after the dog, driving a car, preparing simple meals, dusting, vacuuming, mopping, cleaning the bathroom, doing dishes, attending church, visiting with friends and family, reading, beading, and using the computer—were inconsistent with her complaints of disabling pain and mental symptoms. (Tr. 22-23, 486-91). *See, e.g., Wagner v. Astrue*, 499 F.3d 842, 852-53 (8th Cir. 2007) (finding a claimant's accounts of "extensive daily activities, such as fixing meals, doing housework, shopping for groceries, and visiting friends" supported the ALJ's conclusion that the claimant's complaints were not fully credible). Fourth, the ALJ reasonably considered the relatively limited mental health treatment sought by Plaintiff during the relevant period, which involved several visits to a psychiatric nurse in 2013 but only two visits in 2014, and no visits to a psychiatrist until 2015. *Cf. Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) ("An ALJ may discount a claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment."). Fifth, the ALJ also reasonably considered Plaintiff's ability to answer questions at the hearing, which he found consistent with the ability to perform unskilled, low-stress work with limited social interactions. (Tr. 23). *See Johnson v. Apfel*, 240 F.3d 1145, 1147-48 (8th Cir. 2001) ("The ALJ's personal observations of the claimant's demeanor during the hearing is completely proper in making credibility determinations.").

In sum, the Court finds that the ALJ conducted an express credibility determination, considered several of the relevant factors, and gave good reasons for finding Plaintiff's subjective complaints not entirely credible. The Court will therefore defer to that analysis. *See Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012) ("If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [the court] will normally defer to the ALJ's credibility determination.") (quoting *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008)).

The Court will briefly address several specific arguments raised in Plaintiff's brief. First, Plaintiff describes at length the numerous records indicating that Plaintiff complained of, and received significant treatments for, her pain. The Court acknowledges that there is significant evidence in the record that Plaintiff experienced pain from fibromyalgia, degenerative disc disease, and other conditions. However, the mere fact that Plaintiff experiences pain does not necessarily mean that she is disabled. *See Perkins v. Astrue*, 648 F.3d 892, 900 (8th Cir. 2011) ("While pain may be disabling if it precludes a claimant from engaging in any form of substantial gainful activity, the mere fact that working may cause pain or discomfort does not mandate a finding of disability.") (quoting *Jones v. Chater*, 86 F.3d 823, 826 (8th Cir. 1996)). As discussed above, the ALJ considered both the evidence tending to support Plaintiff's assertion that her pain imposed disabling limitations and the evidence tending to undermine that assertion, weighed the evidence, and came to a conclusion that was supported by substantial evidence. The Court may not reweigh that evidence. *See, e.g.*, *Renstrom*, 680 F.3d at 1064.

Plaintiff also argues that the ALJ should not have relied on Plaintiff's daily activities to find her complaints not fully credible. Plaintiff also points out that the Eighth Circuit has cautioned that a claimant's ability to do limited housework does not indicate that a claimant can perform the requirements of full-time work throughout the working day and week. Plaintiff also notes that she

reported that she has to split up her housework tasks over multiple days; that she sometimes has difficulty with personal care tasks; and that her son and husband also help with pet care, meal preparation, and laundry. The Court finds no error. The Eighth Circuit has recognized that its cases "send mixed signals about the significance of a claimant's daily activities in evaluating claims of disabling pain." *Clevenger v. Soc. Sec. Admin.*, 567 F.3d 971, 976 (8th Cir. 2009); *compare, e.g.*, *Medhaug v. Astrue*, 578 F.3d 805, 875 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain."), *with Reed v. Barnhart*, 399 F.3d 917, 923-24 (8th Cir. 2005) ("[T]his court has repeatedly observed that the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work.") (quotation marks omitted). However, Eighth Circuit cases generally suggest that where such daily activities are inconsistent with a Plaintiff's subjective complaints, it is proper for the ALJ to consider them in conjunction with other factors affecting the credibility of a Plaintiff's complaints. *See*, *e.g., Halverson*, 600 F.3d at 932-33 (holding that the ALJ properly considered daily activities in conjunction with other inconsistencies in the record in assessing the credibility of Plaintiff's complaints); *Wagner v. Astrue*, 499 F.3d at 852-53 (8th Cir. 2007) (finding a claimant's accounts of "extensive daily activities, such as fixing meals, doing housework, shopping for groceries, and visiting friends" supported the ALJ's conclusion that his complaints were not fully credible). The record here indicates that Plaintiff's daily activities included not only housework, but also driving, walking, shopping in stores, paying bills, going to church, visiting with neighbors, reading, beading, playing on the computer, cleaning up after the dog, and vacuuming. Even if some of those activities take her some time to complete, and even if she indicated that she sometimes gets assistance with those activities, it was not unreasonable for the

ALJ to consider her ability to perform them along with other relevant factors in assessing the credibility of her allegations of disabling pain, anxiety, depression, and inability to concentrate.

Plaintiff also argues that the ALJ erred by describing her mental health treatment as "limited," noting that in addition to seeing a psychiatric nurse and seeing Dr. Goldman in 2015, Plaintiff regularly saw Connie Ronimous at Mark Twain Behavioral Health. The Court acknowledges that Plaintiff did frequently met with Ms. Ronimous to discuss Plaintiff's medical and mental health issues and to receive education about relaxation exercises and coping mechanisms. However, Ms. Ronimous is described in the record as a Community Support Specialist, and it does not appear that she was actually providing mental health treatment to Plaintiff. (Tr. 1026). The Court finds no reversible error in the ALJ's statement that Plaintiff's mental health treatment was "limited," particularly as this was only one of several factors he considered.

Plaintiff also argues that because the ALJ gave no weight to Dr. Goldman's opinions, it was improper for the ALJ to make a mental RFC determination without obtaining additional medical opinion evidence regarding Plaintiff's mental impairments rather than drawing his own conclusions from the medical records. The Court finds this argument without merit. "The ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Martise v. Astrue*, 641 F.3d at 927 (quotation marks omitted). Here, the ALJ considered all of the evidence in the record, including the opinion evidence from Plaintiff's treating doctors, the treatment notes and mental status examination findings of Plaintiff's treating psychiatrist, the treatment notes and mental status examination findings of Plaintiff's other treatment providers, and Plaintiff's own testimony about her mental impairments. There was sufficient evidence in the record to permit the ALJ to make his mental RFC

determination. *Cf. Haley v. Massanari*, 258 F.3d 742, 749 (8th Cir. 2001) (finding no error in failing to obtain additional medical opinion evidence where "there was substantial evidence in the record to allow the ALJ to make an informed decision").

Plaintiff also argues that the ALJ failed to account for Plaintiff's obesity. Plaintiff's argument is without merit. The Social Security Administration recognizes that "[t]he combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately." 20 C.F.R. § 404, Subpt. P, App'x 1, § 1.00(Q). *See also* SSR 02–1p, 2002 WL 34686281 (Sept. 12, 2002). Thus, at all stages of the sequential evaluation process, including the RFC determination, "adjudicators must consider any additional and cumulative effects of obesity." 20 C.F.R. 404, Subpt. P, App'x 1, § 1.00(Q). Here, the ALJ expressly discussed Plaintiff's BMI and obesity, but he found that her reports of her daily activities suggested that she was able to manage quite well despite her weight problems. (Tr. 17, 23). That conclusion was reasonable in light of the evidence in the record showing that she could drive, shop, clean up after a dog, prepare simple meals, and do housework (albeit with some difficulty). Moreover, the Court notes that Plaintiff does not point to any evidence in the record showing that Plaintiff's obesity caused any limitations that would render her unable to perform sedentary work. Because the ALJ's discussion makes it clear that he reasonably considered her obesity in evaluating her RFC, the Court finds no reversible error. *See Brown v. Barnhart*, 388 F.3d 1150, 1153 (8th Cir. 2004) (finding that an ALJ adequately considered obesity when he "specifically referred to [the claimant's] obesity in evaluating his claim"); *Heino v. Astrue*, 578 F.3d 873, 881–82 (8th Cir. 2009) (holding that the ALJ adequately took into account a claimant's obesity where the ALJ "made numerous references on the record" to claimant's obesity, noted her weight and height, and included "has a history of obesity" in the hypothetical to the VE; stating, "Because the

ALJ specifically took [the claimant's] obesity into account in his evaluation, we will not reverse that decision.").

Plaintiff also argues that the ALJ did not adequately discuss Plaintiff's fibromyalgia and the effects that it would have on her residual functional capacity. However, the ALJ found Plaintiff's fibromyalgia to be a severe impairment (Tr. 13); expressly discussed Plaintiff's fibromyalgia at several points in his RFC analysis (including discussion of the fact that Plaintiff had trigger points consistent with fibromyalgia) (Tr. 15-23); discussed Plaintiff's physicians' treatment notes related to fibromyalgia (Tr. 15-23); and discussed and evaluated the opinions of Plaintiff's treating physicians, who based their opinions in part on the effects of Plaintiff's fibromyalgia (Tr. 24). Moreover, as noted by the ALJ, Plaintiff reported in June 2015 that her medication had improved her mood and her fibromyalgia symptoms, and she told her doctor that she was feeling better and her symptoms were stable. (Tr. 22, 78, 1244-45). The Court finds no indication that the ALJ failed to consider Plaintiff's fibromyalgia or that there is any need to remand the case for additional discussion of fibromyalgia.

In sum, the Court finds that the ALJ's RFC determination and credibility analysis are supported by substantial evidence in the record as a whole.

## V.   CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the

Commissioner of Social Security is **AFFIRMED**.


_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of March, 2018.